UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALIEN OLIVERA-PEREZ,

      Plaintiff,

    v.

Case No. 2:26-cv-944-KCD-DNF

SECRETARY KRISTI NOEM,
GARRETT J. RIPA, ICE / U.S.
IMMIGRATION AND CUSTOMS
ENFORCEMENT, DHS, EOIR,
ATTORNEY GENERAL PAMELA
BONDI,  WARDEN GLADES
COUNTY DETENTION CENTER,

      Defendants.

_____/

## ORDER

Petitioner Alien Olivera-Perez has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.)[1] He claims that the Attorney General is holding him without a bond hearing in violation of the Immigration and Nationality Act ("INA"), and his continued imprisonment subverts the Fifth Amendment and Administrative Procedure Act ("APA"). (*Id.* at 7-11.) Respondents oppose the petition. (Doc. 7.)

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Background

Olivera-Perez is a Cuban citizen who arrived at the U.S. border on August 30, 2021. (Doc. 7-1 at 2.) He was apprehended and released on his own recognizance with a court date. (*Id.*) On June 1, 2022, an immigration judge failed to prosecute, and a Notice to Appear was returned for re-issue. (*Id.*) On December 14, 2025, Olivera-Perez was detained and served with a Notice to Appear. (*Id.* at 1, 4.) He was ordered removed to Ecuador on February 6, 2026. (*Id.* at 11-14.) Olivera-Perez apparently appealed the removal order, so it is not administratively final.

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## III. Discussion

Olivera-Perez's claims are addressed in turn.

**A. INA**

Sections 1225 and 1226 of the INA govern the detention of noncitizens before a final order of removal, like here. The former provision covers "inadmissible arriving aliens" who are "present in the United States [but have] not been admitted." 8 U.S.C. § 1225(a)(1). So-called "'applicants for admission' in the language of the statute." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Pertinent here, § 1225 "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Id.* The only exception is release "on parole for urgent humanitarian reasons or significant public benefit." *Id.* at 288. So aliens falling under § 1225 are categorically not entitled to a bond hearing.

On the other hand, § 1226 has historically "authorize[d] the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings[.]" *Jennings*, 583 U.S. at 289 (emphasis added). Section 1226(a) sets out a discretionary detention framework for aliens arrested and detained "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). While the arresting immigration officer makes an initial custody determination, noncitizens detained under § 1226(a) may appeal that decision in a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). "Federal regulations provide that aliens detained under §

3

1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306.

According to Olivera-Perez, he is entitled to a bond hearing, and § 1226 is the vehicle through which he would obtain such relief. (Doc. 1 at 7-8.) But this argument runs headlong into the facts. Olivera-Perez was apprehended at the border. That puts him squarely under § 1225. *See, e.g., Lopez v. Hardin*, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *4 (M.D. Fla. Oct. 29, 2025) ("[Section] 1225 applies to noncitizens arriving at a border or port and are presently seeking admission into the United States.").

An alien "who arrives in the United States (whether or not at a designated port of entry[)] shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1). Olivera-Perez concededly meets this definition. He was stopped at the border, had no legal status, and sought entry. *See Jennings*, 583 U.S. at 287 ("[A]n alien who arrives in the United States . . . but has not been admitted, is treated as an applicant for admission.").

Applicants for admission who are inadmissible must be detained pending removal proceedings. *Jennings*, 583 U.S. at 297. The Government has only one alternative under this framework—it can temporarily release the noncitizen on humanitarian parole. *Id.* at 288. But make no mistake, this is not a lawful entry. A paroled noncitizen has not been admitted to the country. Instead, the law treats them as if they never crossed the threshold.

When the parole ends, they return to custody and are treated "in the same manner as that of any other applicant for admission." *Id.* (quoting 8 U.S.C. § 1182(d)(5)(A)). So, while Olivera-Perez may have physically spent time in the interior of the United States after his release, the law places him exactly where he started—at the border, subject to § 1225. *See Campbell v. Almodovar*, No. 1:25-CV-09509 (JLR), 2025 WL 3538351, at *6 (S.D.N.Y. Dec. 10, 2025). "[A]lthough aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Moore v. Nielsen*, No. 4:18-cv-01722-LSC-HNJ, 2019 WL 2152582, at *3 (N.D. Ala. May 3, 2019); *see also Singh v. Noem*, No. CIV 25-1110 JB/KK, 2026 WL 146005, at *36 (D.N.M. Jan. 20, 2026).

Olivera-Perez—who has never been admitted and was found by an "examining immigration officer" to be "not clearly and beyond a doubt entitled to be admitted" 8 U.S.C. § 1225(b)(2)(A)—is properly in custody under §1225(b). Section 1225 says nothing "whatsoever about bond hearings." *Jennings*, 583 U.S. at 297. So Olivera-Perez's continued detention without a bond hearing cannot be in violation of the INA.

5

## B. Substantive Due Process

Even if Olivera-Perez's detention without a bond hearing is authorized by the INA, he argues it violates the Fifth Amendment as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1 at 10.) Not so. As this Court has already explained in detail, such a claim is not available for border aliens held under § 1225. *See Lezcano v. Ripa*, No. 2:26-cv-766-KCD-DNF, 2026 WL 1004523, at *2-5 (M.D. Fla. Apr. 14, 2026). The reasoning from *Lezcano* is equally applicable here. *Id.*

One can certainly understand Olivera-Perez's frustration with his current position, waiting in a detention cell for months while his immigration case inches forward. Yet this Court cannot use judicial fiat to conjure a due process claim just to ease the wait. We are not staring down the barrel of indefinite detention—the constitutional danger the Supreme Court found so problematic in *Zadvydas*. Olivera-Perez's current custody has a clear statutory endpoint: it lasts only "until removal proceedings have concluded." *Jennings*, 583 U.S. at 299. And if he eventually receives a final order of removal only to have his deportation stall, the doors of the courthouse will open for him to seek relief under *Zadvydas*. Because the existing framework comes with a built-in expiration date, there is no reason to engineer a constitutional workaround.

### C. APA

Olivera-Perez also argues that Respondents violated the APA because they failed to properly process him and later attempted to justify his detention retroactively. (Doc. 1 at 10.) The difficulty here is twofold. First, Olivera-Perez has brought this claim in a habeas petition, which is the wrong vehicle for the job. The writ of habeas corpus exists to challenge the fact or duration of physical confinement. It is not a catch-all funnel for standard administrative grievances. Trying to shoehorn a freestanding APA challenge into a habeas petition simply does not work. *See Fleurimond v. Noem*, No. CV-26-00037-PHX-MTL, 2026 WL 507542, at *3 (D. Ariz. Feb. 24, 2026). A habeas petition comes with a streamlined procedure, fast-tracked rules, and a nominal filing fee. An APA challenge, by contrast, is a standard civil action with a heftier filing fee and following the ordinary, more deliberate pace of the Federal Rules of Civil Procedure. Litigants cannot sidestep those standard requirements by simply slapping a habeas label on an administrative complaint. *See Alvarez v. Noem*, No. 5:26-CV-0013-JKP, 2026 WL 93972, at *7 (W.D. Tex. Jan. 9, 2026); *Richmond v. Scibana*, 387 F.3d 602, 606 (7th Cir. 2004) (recognizing legal distinction between habeas cases and civil actions brought under APA, which have different filing fees and exhaustion provisions).

7

Second, the APA itself leaves no room for this claim. The APA operates as a fallback option, providing a right of judicial review only when "there is no other adequate remedy in a court." 5 U.S.C. § 704. But Olivera-Perez has an adequate remedy—the very habeas petition he filed to get through the courthouse doors. *See Trump v. J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring). Because the writ of habeas corpus provides a fully adequate avenue to test the legality of his custody—which is the only thing Olivera-Perez is challenging here—the APA simply leaves no room for this redundant claim. *See Fleurimond,* 2026 WL 507542, at *3; *Rivera v. Noem*, No. 1:25-CV-01289 KWR-KBM, 2026 WL 381309, at *7 (D.N.M. Feb. 11, 2026).

### D. *Accardi* Doctrine

Olivera-Perez also brings a claim under the *Accardi* doctrine. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). The premise of that doctrine is straightforward: "an agency must abide by its own regulations." *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979). "[A]gency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court." *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984). And it "goes without saying that ICE, like all government agencies, must follow its own regulations." *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025).

8

The extent of the claim is two sentences: "Respondent failed to comply with required procedures. These violations invalidate detention." (Doc. 1 at 11.) That's it. Without more, the Court cannot decide this claim. It is unclear what procedures Olivera-Perez alleges Respondents failed to follow, and the Court will not fill in the blanks for him. *See United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.").

**E. Third Country Removal**

Olivera-Perez then shifts his focus from the fact of his detention to his ultimate destination. The Government has made clear that its endgame is to remove him not to Cuba, but to Ecuador. According to the petition, "Respondent has asserted authority to remove Petitioner to a third country without due process" in violation of the Fifth Amendment. (Doc. 1 at 11.) So, he asks the Court to enjoin third-country removal. (*Id.* at 12.)

This claim hits a few roadblocks. First, it puts the cart before the horse. Olivera-Perez is sitting in a detention center, not standing on the tarmac waiting to board a flight to Ecuador. And crucially, he has not shown that he actually attempted to use the agency's established administrative procedures to challenge this new destination. *See* 8 U.S.C. § 1231(b)(C). Nor does he claim the Government shut the door on him making that argument. For that

9

matter, he fails to even explain what ICE's supposed "current policy" actually is or where anyone might find it. Olivera-Perez is asking the Court to preemptively referee a dispute that has not even played out at the agency level. As it stands, then, his grievance is purely hypothetical. *See Coker v. Austin*, 688 F. Supp. 3d 1116, 1121 (N.D. Fla. 2023) ("Federal courts cannot adjudicate hypothetical or abstract disputes, or exercise general legal oversight of the Legislative and Executive Branches.").

But even if his claim were ripe, there is a jurisdictional problem. Under the INA, district courts are stripped of jurisdiction to award injunctive relief that restrains or prevents the execution of a removal order. *See* 8 U.S.C. § 1252(g). That statutory command leaves no room to maneuver. We do not get to play travel agent, and we certainly have no business micromanaging ICE's diplomatic itinerary. *See Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1273 (11th Cir. 2021). Because Olivera-Perez is seeking a preemptive injunction to block his removal, he is asking for something this Court lacks the power to grant. *See Edwin M.-N. v. Green*, No. CV 19-6096 (KM), 2019 WL 13299141, at *2 (D.N.J. Feb. 19, 2019) ("Courts across the country have thus found that they are barred from staying removal, even when the court might otherwise have jurisdiction over the [underlying] claims presented."). For these reasons, this claim cannot get off the ground either.

10

## F. Conditions of Confinement

Lastly, Olivera-Perez alleges that he suffers from an enlarged heart and Respondents have failed to provide him sufficient medical treatment while in custody. (Doc. 1 at 11.) To the extent this is an argument for habeas relief, it is summarily rejected. Challenges to conditions of confinement are not appropriately raised in the habeas context. *See Vaz v. Skinner*, 634 F. App'x 778, 781 (11th Cir. 2015) ("Petitioner's § 2241 petition is not the appropriate vehicle for raising an inadequate medical care claim, as such a claim challenges the conditions of confinement, not the fact or duration of that confinement.").

## IV. Conclusion

Olivera-Perez is legally situated at the border and subject to mandatory detention under 8 U.S.C. § 1225. Because that statute provides no right to a bond hearing, and the Due Process Clause does not step in to supply one for an arriving alien, his continued custody is lawful. Accordingly, Olivera-Perez's Petition for a Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk is directed to terminate any pending motions and close the case.

**ORDERED** in Fort Myers, Florida on May 7, 2026.

Kyle C. Dudek
United States District Judge

11